IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25–cv–00767–DDD–MDB

APPLEWOOD, LLC,

      Plaintiff,

v.

ACUITY, A MUTUAL INSURANCE COMPANY,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Plaintiff Applewood LLC's Motion for Leave to Amend Complaint for Punitive Damages, Bad Faith Litigation Conduct, and Violation of the Colorado Consumer Protection Act. (["Motion"], Doc. No. 42.) Defendant has responded in opposition, (["Response"], Doc. No. 51), and Plaintiff has replied, (["Reply"], Doc. No. 52.) After reviewing the Motion, briefing, and relevant law, the Court **RECOMMENDS** that the Motion be **DENIED**.

### BACKGROUND

This is a first-party insurance dispute where Plaintiff alleges breach of contract, unreasonable delay, and bad faith. (*See* Doc. No. 6.) Discovery closed in May of 2026. (Doc. No. 38.) Plaintiff's time to amend the complaint expired in May of 2025. (Doc. No. 24.) Nevertheless, and with this Motion, Plaintiff seeks to amend its complaint to add a Colorado

Consumer Protection Act ("CCPA") claim, a bad faith litigation conduct claim, and an exemplary damages claim. According to Plaintiff, recently discovered evidence shows that Defendant:

> 1) failed to adopt and implement any standards for handling claims and failed to train its claim handlers on applicable Colorado law, 2) failed to create a claims manual to ensure that claims were handled consistently, 3) fraudulently concealed portions of its claim investigation by routinely hiring attorneys when an insured retains counsel, and 4) failing [sic] to conduct a prompt, fair, and fulsome claim investigation based upon all available information.

(Doc. No. 42 at 2.)

Defendant opposes on three grounds. First, Plaintiff has not satisfied the Rule 16 good cause standard for modifying this Court's Scheduling Order. (Doc. No. 51 at 5.) Second, amendment would unduly prejudice Defendant at this late stage. (*Id.* at 6.) And third, amendment would be futile in three respects: (i) Plaintiff cannot make the *prima facie* showing of willful and wanton conduct required for exemplary damages, (ii) the proposed bad faith litigation conduct claim repackages a discovery dispute or, at best, duplicates Plaintiff's existing bad faith claim, and (iii) the proposed CCPA claim is insufficiently pled. (*Id.* at 6-13.)

The Court heard oral argument on the Motion on July 20, 2026.

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 15(a)

Rule 15 of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or

2

futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). The opposing

party bears the burden of showing that the proposed amendment is improper. *Openwater Safety*

*IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020).

## II.      Federal Rule of Civil Procedure 16(b)

The deadline to amend pleadings has passed. Thus, the Court "must engage in a two-step

analysis…under both Rule 16(b)(4) and Rule 15 of the Federal Rules of Civil Procedure, rather

than a single-tiered analysis under Rule 15(a)[.]" *Openwater Safety IV, LLC,* 435 F. Supp. 3d at

1151. "Rule 16(b) provides that a scheduling order 'may be modified only for good cause and

with the judge's consent.'" *Id.* (citing Fed. R. Civ. P. 16(b)(4).) "Rule 16(b) does not focus on the

bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence

of the party seeking leave to modify the scheduling order to permit the proposed amendment."

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

## III.     Exemplary Damages

Pursuant to C.R.S. § 13-21-102, a plaintiff may seek to amend their pleading to add a

claim for exemplary damages "only after the exchange of initial disclosures pursuant to Rule 26

of the Colorado Rules of Civil Procedure," and must establish *prima facie* proof of a triable

issue.[1] *See* Colo. Rev. Stat. § 13-21-102(1.5)(a). Courts in this District have held that C.R.S. §

13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a

---

[1] "Prima facie evidence is that which, unless rebutted, establishes a fact." *Uhl v. Progressive Direct Ins. Co.*, 765 F. Supp. 3d 1175, 1189 (D. Colo. 2025). "Parties may offer this proof in the form of discovery and by evidentiary means." *Id.* at 1188. The evidence is viewed in the light most favorable to plaintiff. *Id.* at 1189. The decision of whether the evidence is sufficient for this *prima facie* showing is within the sound discretion of the trial court. *Id.* at 1188.

claim for exemplary damages. *See Uhl v. Progressive Direct Ins. Co.*, 765 F. Supp. 3d 1176, 1188 (D. Colo. 2025) (collecting cases).

An award of exemplary damages is supported when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). Conduct is considered "willful and wanton" if it is committed purposefully and the actor realized it was "dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* at (1)(b).

## ANALYSIS

As a threshold matter, Plaintiff does not cite to—let alone discuss—the applicable Federal Rules of Civil Procedure. (*See* Doc. No. 42 at 2-3 (Legal Standard section relying only upon the exemplary damages statute).) Even after Defendant raised the applicable rules in its Response, Plaintiff failed to address them. (*See generally* Doc. Nos. 51, 52.) And while the exemplary damages claim is governed by statute rather than the rules, the CCPA and bad faith litigation conduct amendments must satisfy the requirements of Rules 15 and 16.

Arguing pursuant to Rule 15, Defendant proffers that it has already suffered prejudice by spending time and resources on a dispositive motion. (Doc. No. 51 at 6.) Defendant alleges additional prejudice because amendment would require a re-opening of discovery, a re-framing of the defense, and the hard costs of supplemental expert opinions. (*Id.*) Plaintiff's Reply fails to address this prejudice, or Rule 15 generally, and arguably concedes Defendant's Rule 15 prejudice claims. *See, e.g.*, *Kyles v. Beaugard*, 2023 WL 5277882, at *21 (N.D. Ill. Aug. 16, 2023) ("A reply brief also can waive an argument by failing to respond to the opposing party's counterarguments or new arguments raised in the response brief."). Moreover, without any

4

argument on how Plaintiff's contentions amount to good cause under Rule 16, Plaintiff also arguably concedes the good cause issue.

In short, Plaintiff's failure to make arguments under the applicable legal framework—or respond to Defendant's arguments under that framework—could itself warrant denial of the Motion. *See Eaton v. Pacheco,* 931 F.3d 1009, 1031 (10th Cir. 2019) (where the reply's failure to respond to an argument resulted in waiver); *see also Freeman v. United States*, 875 F.3d 623, 631, n.7 (Fed. Cir. 2017) ("A party's failure to make arguments under the operative legal framework "typically warrants a finding of waiver.").

Still, and for the sake of completeness, the Court will also consider Defendant's futility arguments as to each proposed claim.

## I.      Bad Faith Litigation Conduct

Plaintiff's proposed claim for "bad faith litigation conduct" is simply an extension of its existing common law bad faith claim. Its own arguments and case citations confirm as much. (*See* Doc. No. 42 at 11-12 (arguing that the rationale for these claims is to dissuade an insurer from continuing with a problematic course of conduct, citing cases that support insurance bad faith claims, and generally arguing that Defendant's post-litigation claim adjustment practices amount to the insurer's bad faith).) The Court sees no reason to allow a new claim that is duplicative of an existing claim.[2]

Moreover, and as Defendant correctly notes, many of Plaintiff's arguments in support of a separate bad faith claim appear to be discovery arguments. For example, Plaintiff argues that

---

[2] The Court would consider permitting an amendment that adds new allegations to support the existing bad faith claim, but that is not what Plaintiff requests in its Motion.

certain post-litigation communications and reports have been improperly withheld. (*Id.* at 13.)

Plaintiff also argues that the attorney-client privilege and work product doctrines should not

apply to these post-litigation documents. (*Id.* at 10.) If these issues had been appropriately raised

in discovery, the Court may have offered Plaintiff some relief. *See, e.g., Lynn v. State Farm Mut.*

*Auto. Ins. Co.*, 748 F. Supp. 3d 1030 (D. Colo. 2024) (finding "[p]ost-litigation claim activity is

still relevant to the separate and unabated duty of good faith and fair dealing" and that the

plaintiff was entitled to non-privileged post-suit claim review materials). But Plaintiff did not

raise them. Instead, Plaintiff sat on these issues until discovery closed and now attempts to

convert a forfeited discovery dispute into a new claim. It is either no claim at all, or it is

duplicative. Either way, the bad faith litigation conduct claim is futile.

## II.    CCPA Claim

To sufficiently plead a CCPA claim, Plaintiff must adequately allege the following:

(1) the defendant engaged in an unfair or deceptive trade practice; (2) that the
challenged practice occurred in the course of defendant's business, vocation or
occupation; (3) that it significantly impacts the public as actual or potential
consumers of the defendant's goods, services, or property; (4) that the plaintiff
suffered the injury in fact to a legally protected interest; and (5) that the
challenged practice caused the plaintiff's injury.

*Day v. Freedom Mortg. Corp.,* 2026 WL 1049360, *12 (D. Colo. Feb. 23, 2026) (quoting

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo.

2011)).

Plaintiff's allegations are insufficient. To begin with, Plaintiff's proposed CCPA claim

centers on a private insurance dispute between a corporate entity and an insurance company.

When the wrong is private in nature, it typically falls outside the CCPA's reach. *See generally*

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 149 (Colo. 2003). But even assuming Plaintiff's claim could extend beyond the private dispute at the center of this litigation, the CCPA allegations are entirely conclusory as to public impact. (*See* Doc. No. 42-1 at paras. 37, 54, 58 (broadly claiming that Defendant's claims handling practices "injures [sic] to the benefit of Defendant … and to the detriment of the public," and that Defendant is engaged in "extensive marketing and advertising," and that Defendant's practices "significantly impact consumers of Defendant's insurance products.").) Moreover, during oral argument, the Court gave Plaintiff an opportunity to identify the particular testimony or other evidence that would support public impact, but Plaintiff could not identify any. Instead, Plaintiff offered general allegations of claim mishandling that underpin the existing bad faith claims. This is insufficient and another bite at the apple would not cure the deficiencies. The CCPA claim is futile.

## III.    Exemplary Damages Claim

To support a claim for exemplary damages, Plaintiff must plead sufficient facts to show Defendant acted heedlessly and recklessly. *Uhl*, 765 F. Supp. 3d at 1192. "[S]uch damages 'may be awarded on a claim of bad faith breach of an insurance contract, so long as the breach is accompanied by circumstances of 'fraud, malice, or willful and wanton conduct.'" *Easton v. Encompass Indem. Co.*, 2019 WL 13153692, at *8 (D. Colo. Nov. 8, 2019) (quoting Colo. Rev. Stat. § 13-21-102(1)(a)). In other words, the facts that support an exemplary damages claim, must go beyond those that already underpin the bad faith claim. *See Uhl*, 765 F. Supp. 3d at 1192.

Here, Plaintiff makes a single conclusory statement in its proposed Fifth Claim for Relief that, "Defendant Acuity's conduct, described herein, was undertaken willfully, wantonly, and/or

7

fraudulently, and in reckless disregard of Plaintiff's rights." (Doc. No. 42-1. at ¶ 62.) But conclusory allegations, without more, are insufficient to support an exemplary damages claim. *See Easton v. Encompass Indem. Co.*, 2019 WL 13153692, at *9 (D. Colo. Nov. 8, 2019) (rejecting an exemplary damages request where the "[p]laintiffs' allegations in support of exemplary damages [were] entirely conclusory"). Thus, the Court turns to the facts alleged in the general allegations section (*see* Doc. No. 42-1 at 3-4), and the supporting evidence cited in Plaintiff's Motion, to determine whether Plaintiff's allegations demonstrate fraud, malice, or willful and wanton conduct.

Plaintiff alleges the following:

(1) Defendant does not have a claims manual (Doc. No. 42-1 at ¶ 33.)

(2) The claims adjuster testified that she handles claims based on her own experience and that other adjusters may have adjusted the claim differently. (*Id.* at ¶ 34.)

(3) Defendant failed to adopt and implement standards for the prompt resolution of claims under its policies. (*Id*. at ¶ 35.)

(4) Defendant failed to train its claim handlers on applicable Colorado law, which resulted in the poor handling of Plaintiff's claim. (*Id*. at ¶ 36.)

In *Uhl*, which both parties cite, the court allowed an exemplary damages claim because the proffered evidence showed a specific failure to train on liens, ignorance of governing law, failure to use available resources, and evidence demonstrating that the stated reason for the delay in payment was pretextual. *Uhl*, 765 F. Supp. 3d at 1191. By contrast here, Plaintiff's primary

contention is the failure to maintain a written claims manual.[3] But Plaintiff does not offer, and the Court has not found, any law, regulation, or case citation to support the notion that Defendant is required to maintain a written claims manual. Certainly the failure to maintain a written manual may lend support to Plaintiff's bad faith claims, but the allegations do not demonstrate reckless, heedless, fraudulent, or malicious conduct.

Moreover, while Plaintiff has alleged training failures that bear some similarity to the allegations in *Uhl*, Plaintiff's allegations are conclusory, at best. (*See* Doc. No. 42-1 at ¶ 36 (alleging that "Defendant Acuity failed to train its claim handlers on applicable Colorado law resulting in poor handling of Plaintiff's claim.").) The proposed amended complaint fails to offer any specificity on the particular training at issue, or why the failure to provide that particular training is heedless, reckless, or otherwise amounts to willful and wanton conduct. (*See generally* Doc. No. 42-1.) And while Plaintiff's Motion purports to support its conclusory contentions with the adjuster's testimony, a close review of that testimony belies Plaintiff's broad-sweeping contentions. For example, Plaintiff contends the adjuster received zero training on how to adjust a claim, (*See* Doc. No. 42 at 5 (citing Exhibit 2 (Strey Depo.) at 21-23, 15, 31, 32)), and that Defendant failed to adopt and implement standards for the resolution of claims (Doc. No. 42 at 7). But the adjuster testified she underwent a 12-week training program with seven to eight hours per day of training, along with on-the-job training related to claim adjustment. (Doc. No. 42-2 at 22-23.) She also testified about weekly file reviews to ensure continuity across claim adjusters

---

[3] Though Plaintiff made several arguments, the claims manual argument was the one most emphasized in the Reply and during oral argument. Additionally, it appears to be the only contention unambiguously supported by the testimony and evidence.

(*id.* at 28-29), and she confirmed that all adjusters employ the same process and knowledge with respect to claims handling (*id.* at 30-31).

Moreover, though Plaintiff relies on the adjuster's deposition testimony to identify two specific training gaps in its Motion (*see* Doc. No. 42 at 5 (calling out the lack of training on Colorado law and generating estimates)), Plaintiff offers no supporting facts, testimony, expert opinion or other evidence to demonstrate how these particular training gaps amount to willful and wanton conduct. *Cf. Uhl*, 765 F. Supp. 3d at 1192–93 (saying "[t]he specific facts in [the plaintiff's] Motion to Amend ... support Plaintiff's theory of punitive damages").

It is true that at this stage Plaintiff is held to a relatively light burden and does not need to *prove* the punitive damages claim. *See id.* at 1188 ("[T]he Court considers only the preliminary question of whether Plaintiff has made a prima facie showing that the injury complained of is attended by willful and wanton conduct, not whether he will ultimately prevail." (internal quotation marks omitted). But the conclusory allegations in the proposed complaint, coupled with the sparse assertions in the Motion, demonstrate, at best, a training and standards deficiency, not malicious, reckless, or heedless conduct that gives rise to a separate punitive damages claim.

## CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Plaintiff Applewood LLC's Motion for Leave to Amend Complaint for Punitive Damages, Bad Faith Litigation Conduct, and Violation of the Colorado Consumer Protection Act (Doc. No. 42) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of July, 2026.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

12